1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10
11

NEKITA D. H.,[1]

Case No. 2:24-cv-05792-PD

12

Plaintiff,

13

v.

**MEMORANDUM OPINION AND ORDER REVERSING AGENCY DECISION AND REMANDING**

14

LELAND DUDEK,[2] ACTING

15

COMMISSIONER OF SOCIAL SECURITY,

16

Defendant.

17
18

    Plaintiff challenges the denial of her applications for Social Security

19

Disability Insurance Benefits ("SSDI") and Supplemental Security Income

20

("SSI"). For the reasons stated below, the decision of the Administrative Law

21

Judge is reversed, and the Court remands this matter on an open record for

22

further proceedings.

23
24

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil

25

Procedure 5.2(c)(2)(B) and the recommendation of the United States Judicial

26

Conference Committee on Court Administration and Case Management.

27

[2] Leland Dudek became the Acting Commissioner of Social Security on February 18,

28

2025, and is substituted as Defendant in this suit. *See* 42 U.S.C. § 405(g).

## I.    Pertinent Procedural History and Disputed Issue

On October 24 and December 6, 2021, Plaintiff filed applications for SSI and SSDI, respectively.  [Administrative Record ("AR") 230, 239, 240.[3]] Plaintiff alleges that she became disabled and unable to work on August 8, 2020.  [AR 231, 240.]  Plaintiff's application was denied on June 17, 2022 and upon reconsideration on September 6, 2022.  [AR 122, 129.]  Plaintiff requested a hearing, which was held before an Administrative Law Judge ("ALJ") on April 19, 2023.  [AR 36.]  Plaintiff appeared with counsel, and the ALJ heard testimony from Plaintiff, a vocational expert ("VE"), and two medical experts.  [AR 36-37.]  On September 6, 2023, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act ("SSA").  [AR 31.]  The Appeals Council denied Plaintiff's request for review on May 29, 2024, rendering the ALJ's decision the final decision of the Commissioner.  [AR 1.]

The ALJ followed the five-step sequential evaluation process to assess whether Plaintiff was disabled under the SSA.  *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *superseded on other grounds by regulation*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5852 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416), *as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 8, 2020, the alleged onset date.  [AR 20.]

At step two, the ALJ found that Plaintiff had the following severe impairments:  "lumbar disc disease, synovitis of the bilateral feet, and depression (20 CFR 404.1520(c) and 416.920(c))."  [*Id.*]  The ALJ found the

---

[3] The Administrative Record is at CM/ECF Docket Numbers 12-1 through 12-10. Plaintiff's Brief, the Commissioner's Brief, and Plaintiff's Reply are at Docket Numbers 13, 17 and 18, respectively.

1   medically determinable impairments significantly limit Plaintiff's ability to
2   perform basic work activities.  [*Id.*]

3       At step three, the ALJ found that Plaintiff "does not have an
4   impairment or combination of impairments that meets or medically equals the
5   severity of one of the listed impairments in 20 CFR Part 404, Subpart P,
6   Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and
7   416.926)."  [*Id.*]

8       Before proceeding to step four, the ALJ determined that Plaintiff has
9   the Residual Functional Capacity ("RFC") to perform at a reduced level:
10  "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with
11  occasional postural activity and a limitation to simple, repetitive tasks and
12  unskilled work." [AR 23.[4]]

13      At step four, the ALJ found that Plaintiff "is unable to perform any past
14  relevant work (20 CFR 404.1565 and 416.965)."  [AR 29.]

15      At step five, considering Plaintiff's age, education, work experience, and
16  RFC, the ALJ found there are jobs which exist in significant numbers in the
17  national economy that Plaintiff can perform, in the occupations of "marker,"
18  "housekeeping cleaner," and "sales attendant."  [AR 29-30.]  Accordingly, the

---

20  [4] The regulations define "light work" as follows:

22      Light work involves lifting no more than 20 pounds at a time with
        frequent lifting or carrying of objects weighing up to 10 pounds.  Even
        though the weight lifted may be very little, a job is in this category
23      when it requires a good deal of walking or standing, or when it involves
        sitting most of the time with some pushing and pulling of arm or leg
24      controls.  To be considered capable of performing a full or wide range of
        light work, you must have the ability to do substantially all of these
25      activities.  If someone can do light work, we determine that he or she
        can also do sedentary work, unless there are additional limiting factors
26      such as loss of fine dexterity or inability to sit for long periods of time.

28  20 C.F.R. §§ 404.1567(b), 416.967(b) (2025).

3

ALJ concluded that Plaintiff has not been under a disability as defined in the SSA from August 8, 2020 through the date of the ALJ's decision.  [AR 30.]

Plaintiff raises two issues:  first, whether the ALJ properly considered the medical opinions of Ali Dini, M.D. and Andrzej Bulczynski, M.D., and second, whether the ALJ properly considered Plaintiff's subjective symptom testimony.  [Dkt. No. 13 at 6, 17, 22.]

## II.    Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the agency's decision to deny benefits.  A court will vacate the agency's decision "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard."  *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020) (citation and internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion."  *Id.* (citation and internal quotation marks omitted); *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (same).

It is the ALJ's responsibility to determine credibility and to resolve conflicts in the medical evidence and ambiguities in the record.  *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020).  "Where evidence is susceptible to more than one rational interpretation," the ALJ's reasonable evaluation of the proof should be upheld.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Tran v. Saul*, 804 F. App'x 676, 678 (9th Cir. 2020).[5]

---

[5] Although statements in unpublished Ninth Circuit opinions "may prove useful [] as examples of the applications of settled legal principles," the Ninth Circuit has cautioned lower courts not to rely heavily on such memorandum dispositions particularly as to issues of law.  *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020) ("a nonprecedential disposition is not appropriately used . . . as the pivotal basis for a legal ruling by a district court").

1    Error in Social Security determinations is subject to harmless error

2    analysis. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Error is

3    harmless if it is "inconsequential to the ultimate nondisability determination"

4    or, despite the legal error, "if the agency's path may reasonably be discerned."

5    *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)

6    (citation and internal quotation marks omitted).

### III.    Discussion

#### A.    The ALJ Erred in Evaluating the Medical Opinions of Drs. Dini and Bulczynski

10    Plaintiff argues the ALJ did not properly consider the medical opinions

11    of Drs. Dini and Bulczynski, which were harmful errors because the assessed

12    limitations were not accounted for in the RFC. [Dkt. No. 13 at 6, 16-17, 21-

13    22.] The Commissioner argues that the ALJ was not required to assess these

14    medical opinions, and that in any event, the ALJ considered Dr. Bulczynski's

15    assessment and translated Dr. Bulczynski's unspecific limitations into the

16    RFC as a limitation of light work. [Dkt. No. 17 at 7, 8, 12.]

#### 1.    Relevant Law

18    An RFC is "an assessment of an individual's ability to do sustained

19    work-related physical and mental activities in a work setting on a regular and

20    continuing basis." Social Security Ruling 96-8P, 1996 WL 374184, at *1 (July

21    2, 1996). It reflects the most a claimant can do despite their limitations.

22    *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC determination

23    must be based on all of the relevant evidence, including the diagnoses,

24    treatment, observations, and opinions of medical sources, such as treating and

25    examining physicians. 20 C.F.R. § 404.1545. The ALJ is responsible for

26    translating and incorporating supported medical evidence into a succinct

27    RFC. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

28

It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford*, 950 F.3d at 1149. Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld. *Ryan*, 528 F.3d at 1198.

The Social Security Administration regulations for claims filed on or after March 27, 2017 apply here. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 2017 WL 168819, at 5844-45 (Jan. 18, 2017). Under these regulations, special deference is no longer given to the opinions of treating and examining physicians on account of their relationship with a claimant, and an ALJ's "decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022); 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from [a claimant's] medical sources.").

The regulations require ALJs to consider and evaluate the persuasiveness of all medical opinions and prior administrative medical findings from medical sources. *See* 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). In determining how "persuasive" these opinions and findings are, an ALJ must consider the following factors: supportability, consistency, relationship with claimant, specialization, and other factors that support or contradict the medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). "Supportability" and "consistency" are the most important factors to be considered when evaluating the persuasiveness of medical opinions and, therefore, the ALJ is required to explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical

6

evidence.'" *Woods*, 32 F.4th at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)); 20 C.F.R. § 416.920c(c)(1).  "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(2)); 20 C.F.R. § 416.920c(c)(2).  While the ALJ's decision must articulate how the ALJ considered supportability and consistency, the decision need not explain the remaining factors unless the ALJ is deciding among differing yet equally persuasive opinions or findings on the same issue. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b); *Woods*, 32 F.4th at 792.

An ALJ must provide an explanation supported by substantial evidence, which articulates how they considered both supportability and consistency. *Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023); *see also Titus L. S. v. Saul*, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021) (ALJ must address how they considered the consistency and supportability factors in sufficient detail to allow a reviewing court to conduct a meaningful review of whether that reasoning is supported by substantial evidence).

An RFC is defective if it fails to take a plaintiff's limitations into account.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  However, "[t]here is no requirement that the RFC recite medical opinions verbatim, rather the ALJ is responsible for translating and incorporating medical findings into a succinct RFC."  *McIntosh v. Colvin*, 2018 WL 1101102, at *5 (S.D. Cal. Feb. 26, 2018); *see also Foster v. Kijakazi*, 2022 WL 3230472, at *2 (9th Cir. Aug. 10, 2022) ("An ALJ considers opinions from medical sources on the issue of a claimant's RFC, but the final responsibility for deciding this issue is reserved to the Commissioner.") (citations, internal quotation marks, and alterations omitted).  Finally, it is well established that RFC determinations are legal decisions, not medical opinions.  *Valerie C. v. Berryhill*, 2019 WL 450675, at *6 (C.D. Cal. Feb. 5, 2019).

7

### 2.    Dr. Dini's Forms and Reports

The Administrative Record contains 115 pages relating to Dr. Dini's treatment and evaluation of Plaintiff.[6]  [AR 394-447, 451-511.]  Some portions of the record are duplicative.[7]  [*See, e.g.,* AR 433-42 *and* AR 452-61.]  For most of 2022, Dr. Dini treated Plaintiff and completed medical notes on a form titled "Primary Treating Physician's Progress Report (PR-2)" ("PR-2") and has as part of its header "State of California Division of Workers' Compensation" ("Workers' Compensation").  [*See, e.g.,* AR 395-96 (exam dated Jan. 18, 2022), 399-400 (exam dated April 12, 2022), 431-32 (exam dated Sept. 27, 2022).]  Dr. Dini also completed other forms with Workers' Compensation headers, such as the "Doctor's First Report of Occupational Injury or Illness" ("DFR") and, on multiple dates, the "Request for Authorization" ("RFA").  [*See, e.g.,* AR 443-45 (DFR dated Jan. 18, 2022), 477 (RFA dated July 14, 2022).]  Dr. Dini also created two reports on his own letterhead:  "Orthopedic Primary Treating Physician's Progress Report" ("Progress Report"), and "Orthopedic Primary Treating Physician's PR-4 Impairment Rating Per AMA Guide Fifth Edition" ("Final Report").  [AR 471-75 (Progress Report), 433-42 (Final Report).]  The Progress Report is dated August 16, 2022 and signed October 11, 2022.  [AR 475.]  The Final Report is dated November 8, 2022 and signed December 13, 2022.  [AR 442.]

Dr. Dini's Progress Report contains the following sections:  Job Description, History of Injury, Roentgenographic/Diagnostic Evaluation, Current Symptoms, Course of Treatment, Recommendations, Work Status, and Affidavit of Compliance.  [AR 472-75.]  In the Progress Report, Dr. Dini

---

[6] Six other pages in the Administrative Record also relate to Dr. Dini, but these note that no records were found at a certain location for Dr. Dini.  [AR 383-88.]

[7] Where material is duplicative, only one set is cited.

includes subjective evidence as to Plaintiff's symptoms of "[l]ower back pain" and "[b]ilateral foot pain." [AR 472.] Dr. Dini also discusses objective evidence. Such evidence includes x-rays of Plaintiff's lumbar spine (which was "normal"), left foot (which was "normal"), and right foot (which "revealed hallux valgus").[8] [*Id.*] Additional objective evidence comes from MRIs of the lumbar spine (which showed "a 2.1 mm disc bulge at L3-4 and a 2.2 mm disc bulge at L4-5), left foot (which showed "mild joint effusion of metatarsophalangeal joint, minimal talocrural and subtalar joint effusion and mild flexor hallucis longus tenosynovitis"), and right foot (which showed "ankle joint effusion and minimal subtalar joint effusion"). [AR 473.] After recommending Plaintiff take two medications, continue acupuncture, and reevaluate in four weeks, Dr. Dini states in the Work Status section that Plaintiff "is considered temporarily partially disabled." [*Id.*]

In the Final Report,[9] Dr. Dini includes subjective evidence as to Plaintiff's initial and current symptoms of "[l]ower back pain" (currently described as "intermittent, mild-to-moderate") and "[b]ilateral foot pain" (currently described as "with prolonged standing and walking"). [AR 434.] Dr. Dini also discusses objective medical evidence, including measure of vitals, various range of motion tests (with Plaintiff's range compared to the "average" or "normal" range), and strength tests for lower and upper

---

[8] A "hallux valgus" (also known as a "bunion") is a bony growth that forms on the big toe, which can cause pain.

[9] Dr. Dini's Final Report contains the following sections: Job Description, Initial Symptoms, Current Symptoms, Orthopedic Examination (with subsections), Lower Extremity Examination (with subsections), Upper Extremity Examination (with subsections), Impression, Work Restrictions, Impairment Rating Per AMA 5th Edition Guidelines, Discussion of Permanent Disability in Light of Almaraz-Guzman I and Almaraz-Guzman II Decisions, Discussion of Apportionment According to Labor Code Section 4663 and 4664 and According to the Escobedo Case, Future Medical Care, Supplemental Job Displacement Benefits, and Affidavit of Compliance. [AR 434-42.]

9

extremities (with the "normal" strength given in the subsection title).  [AR 434-39.]  Dr. Dini's impression is that Plaintiff has synovitis[10] in the metatarsophalangeal joint of her left foot, plantar fasciitis[11] in her left foot, synovitis in her right foot, plantar fasciitis in her right foot, lumbar disc bulge, and lumbar strain.  [AR 439.]  Dr. Dini recommended these work restrictions:  that Plaintiff "be precluded from prolonged standing and walking and no heavy lifting, repeated bending and stopping."  [Id.]  Dr. Dini also recommended future medical care for Plaintiff's feet issues ("access to orthopedic evaluation, prescription medication with possible cortisone injection on plantar fascia bilaterally") and back issues ("access to orthopedic evaluation, course of physical therapy, prescription medication and a pain management consult for the lumbar spine").  [Id.]  Dr. Dini gave the following impairment ratings:  "DRE lumbar category II with 8% whole person impairment"; "[u]sing Guzman, there is 12% impairment of the whole person indicated for pain on plantar fascia, both feet"; and "[t]he total whole person impairment for bilateral feet, and lumbar spine utilizing the Combined Value Chart is 17%."[12]  [AR 439-40.]  Dr. Dini did not apportion liability.  [AR 440.]

### 3.    Dr. Bulczynski's Medical Evaluation

The Administrative Record contains 78 pages relating to Dr. Bulczynski's evaluation of Plaintiff.  [AR 519-96.]  All these records are from one report titled "Panel Qualified Medical Evaluation in the Specialty of Orthopedic Surgery" ("Medical Evaluation").  [Id.]  Dr. Bulczynski's Report is dated and signed October 4, 2022.  [AR 596.]

---

[10] "Synovitis" is a form of joint inflammation, which can lead to pain and swelling.

[11] "Plantar fasciitis" is inflammation of the "plantar fascia," which is the tissue at the bottom of the foot that connects the heel to the toes.

[12] "DRE" is an acronym for "diagnosis-related estimate."

In the Medical Evaluation,[13] Dr. Bulczynski notes that 872 pages of medical records were received and that all records were reviewed.  [AR 520.] Dr. Bulczynski includes subjective evidence as to Plaintiff's symptoms, with "frequent 3-4 out of 10 pain" stated for her low back, left foot, and right foot, and detailed descriptions of what she is feeling in each area.  [AR 586.]  Dr. Bulczynski also discusses objective medical evidence.  Such evidence includes evaluation of Plaintiff's gait (which was normal bilaterally in all measures evaluated), range of motion (with Plaintiff's range compared to the "normal" range), strength (same as with range of motion), and reflexes (same as with range of motion).  [AR 590-93.]  Additional evidence includes a note of Dr. Dini's x-ray report.  [AR 593-94.]  Dr. Bulczynski diagnoses Plaintiff with low back pain, left foot contusion, and right foot contusion.  [AR 594.]  Dr. Bulczynski gave the following restrictions: "[n]o lifting greater than 20 pounds[,] [n]o frequent bending[,] [n]o prolonged standing or walking."  [AR 595.]  Dr. Bulczynski's only recommendation is that Plaintiff "[c]ontinue acupuncture for bilateral foot."  [*Id.*]  Dr. Bulczynski did not give an impairment rating or apportion liability, stating they would be "premature at this time" because Plaintiff "has not reached maximum medical improvement and is not permanent and stationary."  [*Id.*]  Dr. Bulczynski found the foot injury "to be industrial" and the low back injury "to be non-industrial."  [*Id.*]

---

[13] Dr. Bulczynski's Medical Evaluation contains the following sections:  Billing, Identifying Data, Review of Medical Records (with subsections), History of Present Injury, Present Work Status, Prior Work History and Duties, Chief Complaints, Review of Systems (with subsections), Activities of Daily Living, Past History Social History, Physical Examination (with subsections), Diagnostic Workup, Diagnoses, Injury History, Treatment Summary, Discussion, Causation, Disability Status, Impairment Rating, Apportionment, Work Status, Current Recommendation, and Physician Disclaimer.  [AR 520-96.]

### 4.    The ALJ's Finding and Reasoning

The ALJ's decision does not specifically consider or mention the Progress Report, the Final Report, or the Medical Evaluation.  The decision does state that there are "multiple assessments concluding that the claimant had various modified work restrictions, was 'totally temporarily disabled' or otherwise unable to return to work for particular periods".  [AR 26.]  The ALJ did not provide a citation for where these assessments are located in the record.  The Court was only able to find a reference to the phrase "temporarily totally disabled" in Dr. Bulczynski's Medical Evaluation.  [AR 580 (reviewing medical history).]  Based on this reference and the ALJ's reasoning, the Cout concludes that the ALJ is referring to the Progress Report, the Final Report, and the Medical Evaluation.

The ALJ found that "these assessments, albeit by treating sources, are not persuasive."  [AR 27.]  The ALJ provided the following four reasons for this finding.  [AR 26.]

First, the ALJ observed that "[a]s a matter of law, the Social Security Administration is not bound by any determinations of disability made under the Worker's Compensation system (20 CFR 404.1504)."  [*Id.*]

Second, the ALJ noted that "medical source and other opinions on issues that are reserved to the Commissioner, include [list of items excluded for brevity]. . . . Such assessments which are part of a Worker's Compensation case, and which consider only an individual's ability to return to past work, therefore are insufficient under Title II and Title XVI disability determination[s] — because there is no assessment of the individual's ability to sustain other competitive work in the national economy."  [*Id.*]

Third, the ALJ discussed how the conclusions, observations and findings made in these Worker's Compensation reports are considered to be "of limited probative value" because they "rely on criteria used which is not

12

the same as that used in determining disability under the Social Security Act and Regulations" and because the purpose of these reports "is usually to establish causation and apportionment (which are not relevant to the determination of disability under Social Security guidelines)." [*Id.*]

Finally, the ALJ claimed that "insufficient objective support has been cited in support of these opinions for [the] purpose of assessing disability since there also is no function-by-function determination with regard to the claimant's residual capacity for any consecutive 12-month period that supports greater limits than found herein." [*Id.*] The ALJ also stated the diagnoses "appear to rely on self-reported complaints, rather than on imaging, clinical reports, or other objective medical evidence." [*Id.*]

The Court considers the ALJ's claims about "objective support" for the assessments to be a discussion about their supportability. The ALJ's decision does not discuss the factor of consistency as a reason for finding the "assessments" to be unpersuasive.

### 5.    The ALJ's Finding is Based on Legal Error

#### a)    Medical Opinions (and Their Required Factors) Must Be Considered Under the 2017 Regulations

First, the ALJ was not required to include any analysis about the Worker's Compensation disability determination. The 2017 regulations expressly state that "[d]ecisions by other governmental agencies and nongovernmental entities", "[d]isability examiner findings", and "[s]tatements on issues reserved to the Commissioner" are "inherently neither valuable nor persuasive" to the issue whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1504, 404.1520b(c)(1).(c); *Kitchen*, 82 F.4th at 739 ("Put simply, the 2017 regulations removed any requirement for an ALJ to discuss another agency's rating.").

13

1    However, that does not resolve the issue in this case.  The ALJ must
2    "consider all evidence" in the case record when making a decision about
3    whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(3) (citing 20 C.F.R.
4    § 404.1520b).  Even when the record contains a governmental agency or
5    nongovernmental entity *decision* that the ALJ need not consider, the ALJ
6    must still consider "all of the *supporting evidence* underlying the other
7    governmental agency or nongovernmental entity's decision" that is received as
8    evidence with the claim "in accordance with [20 C.F.R.] § 404.1513(a)(1)
9    through (4)."  20 C.F.R. § 404.1504 (emphasis added).  The specified
10   "categories of evidence" that must be considered as supporting evidence
11   include:  "objective medical evidence", "medical opinion", "other medical
12   evidence", and "evidence from nonmedical sources".  20 C.F.R.
13   § 404.1513(a)(1)-(4).  "A medical opinion is a statement from a medical source
14   about what [a claimant] can still do despite [their] impairment(s) and whether
15   [they] have one or more impairment-related limitations or restrictions in the
16   following abilities [list omitted for brevity]."  20 C.F.R. § 404.1513(a)(2).  The
17   ALJ must "explain how [they] considered the supportability and consistency
18   factors for a medical source's medical opinions . . . ."  20 C.F.R.
19   § 404.1520c(b)(2).  As noted above, the regulations require ALJs to consider
20   medical opinions as supporting evidence, even when those medical opinions
21   appear in the same document as a decision that the ALJ need not otherwise
22   consider.  20 C.F.R. §§ 404.1504, 404.1513(a)(2).

23       This accords with *Kitchen*, 82 F.4th at 738-39, 740 n.4, in which the
24   Ninth Circuit addressed both whether an ALJ erred in excluding a United
25   States Veteran's Administration ("VA") disability rating from their analysis
26   and whether that ALJ had properly assessed the consistency and
27   supportability of the medical opinion of a VA doctor.  The court held that the
28   ALJ did not err in excluding the VA disability rating because the new

14

regulations do not require consideration of such ratings and that the ALJ did not err in rejecting the VA doctor's medical opinion because the ALJ had explicitly discussed the supportability and consistency of the opinion. *Id.* In other words, the ALJ in *Kitchen* acted within the scope of the 2017 regulations when rejecting the VA doctor's medical opinion because the ALJ explicitly discussed the medical opinion's supportability and consistency, not because the VA doctor's medical opinion was equivalent to the VA disability rating.

Regarding the ALJ's second point, the Court concurs that the regulations establish a specified list of "statements on issues reserved to the Commissioner" and that, pursuant to the regulations, evidence as to such statements are considered "inherently neither valuable nor persuasive to the issue of whether [claimants] are disabled or blind under the [SSA]". 20 C.F.R. § 404.1520b(c), (c)(3). However, regardless of whether a medical source has provided an assessment of an individual's ability to sustain other competitive work in the national economy, or whether the assessment would otherwise be sufficient for a disability determination, the regulations require ALJs to consider medical opinions as supporting evidence and to explicitly discuss the supportability and consistency of those medical opinions. 20 C.F.R. §§ 404.1504, 404.1513(a)(2), 404.1520c(b)(2).

As to the ALJ's third point, under the 2017 regulations, in most instances the ALJ can choose whether to consider evidence of "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c)(5). The ALJ is only required to explain the remaining factors when deciding among differing yet equally persuasive opinions or findings on the same issue. *See* 20 C.F.R. §§ 404.1520c(b)(3); *Woods*, 32 F.4th at 792. Thus, while there might be a factual issue (e.g., a lack of substantial evidence) pertaining to the ALJ's discussion of "other factors", the ALJ was allowed as a matter of law to

consider whether the Progress Report, the Final Report, and the Medical Evaluation were "of limited probative value" because they "rely on criteria used which is not the same as that used in determining disability under the [SSA] and Regulations" and because their purpose "is usually to establish causation and apportionment".  [AR 26.]  However, the problem remains that the regulations do not allow such "other factors" to discharge ALJs from their duty to consider mandatory factors.  20 C.F.R. § 404.1520c.  Rather, the regulation always requires consideration of supportability and consistency, which are "the most important factors" for considering the persuasiveness of a medical source's medical opinion.  20 C.F.R. § 404.1520c(b)(2) (The ALJ "*will explain* how [they] considered the supportability and consistency factors for a medical source's medical opinions" in the decision.) (emphasis added).

### b)    The ALJ Erred by Not Discussing the Consistency of the Medical Opinions

In this case, Dr. Dini created two notable reports (the Progress Report and the Final Report), and Dr. Bulczynski created one report (the Medical Evaluation) in addition to the PR-2s.  Each of these reports contains "evidence that is inherently neither valuable nor persuasive", and thus those statements, findings, and/or determinations did not have to be considered in the ALJ's decision.[14]  20 C.F.R. § 404.1520b(c); *see also Kitchen*, 82 F.4th at 739.  However, two of these reports — the Final Report and the Medical Evaluation — also contain medical opinions that had to be considered

---

[14] For example, Dr. Dini writes in the Progress Report's "Work Status" section that Plaintiff "is considered temporarily partially disabled" [AR 473]; Dr. Dini writes in the Final Report's "Impairment Rating" section that Plaintiff's "total whole person impairment for bilateral feet, and lumbar spine . . . is 17%" [AR 439-40]; and Dr. Bulczynski writes in the Medical Evaluation's "Disability Status" section that Plaintiff "has not reached maximum medical improvement and is not permanent and stationary" [AR 595].

16

pursuant to the Agency's regulations.[15]  Dr. Dini's medical opinion was that Plaintiff "should be precluded from prolonged standing and walking and no heavy lifting, repeated bending and stooping."  [AR 439.]  Dr. Bulczynski's medical opinion was that Plaintiff's "work status" should be: "[n]o lifting greater than 20 pounds[,] [n]o frequent bending[,] [n]o prolonged standing or walking."  [AR 595.]  These medical opinions are not any of the following: (1) decisions; (2) findings on medical issues, vocational issues, or (3) the ultimate determination about whether Plaintiff is disabled; or one of the specified statements on issued reserved to the Commissioner.  *See* 20 C.F.R. § 404.1520b(c)(1)-(3).  Rather, the restrictions provided in these reports — in which Drs. Dini and Bulczynski described Plaintiff's functional abilities and limitations instead of making a statement about Plaintiff's RFC using the Agency's "programmatic terms" — are medical opinions that must be considered as supporting evidence, not evidence that is inherently neither valuable nor persuasive.  *Compare* 20 C.F.R. §§ 404.1504, 404.1513(a)(2) *with* 20 C.F.R. § 404.1520b(c)(3)(v).

The ALJ did not explicitly or implicitly discuss the consistency of Drs. Dini's and Bulczynski's medical opinions [AR 26-27], as required.  *See* 20 C.F.R. § 404.1520c(b)(2).  Thus, the lack of any discussion regarding the consistency of these medical opinions is legal error for the reasons discussed above.

### 6.  The ALJ's Finding Lacks Substantial Evidence

The ALJ's final argument in finding the assessments of Drs. Dini and Bulczynski unpersuasive was that "insufficient objective support has been

---

[15] The Progress Report did not have a medical opinion because it did not describe what Plaintiff could still do despite her impairments or whether she has one or more impairment-related limitations or restrictions in her abilities.  20 C.F.R. § 404.1513(a)(2).

17

cited in support of these opinions for [the] purpose of assessing disability since there also is no function-by-function determination with regard to the claimant's residual capacity for any consecutive 12-month period that supports greater limits than found herein." [AR 26.] The ALJ also claimed the diagnoses "appear to rely on self-reported complaints, rather than on imaging, clinical reports, or other objective medical evidence." [*Id.*]

As a factual matter, the ALJ's statements about the objective support (i.e., the supportability) for these medical opinions are incorrect. As discussed at length above, Drs. Dini and Bulczynski both examined Plaintiff, considered objective medical evidence in writing their respective reports, and wrote reports that contain function-by-function determinations of the sort described by the ALJ. [AR 472-73 (for Progress Report), 434-39 (for Final Report), 590-94 (for Medical Evaluation).] Regarding objective medical evidence, the Progress Report considered x-rays and MRIs [AR 472-73]; the Final Report considered vitals, range of motion tests, and strength tests [AR 434-39]; and the Medical Evaluation considered evaluations of Plaintiff's gait, range of motion, strength, and reflexes — as well as a review of 872 pages of medical records, discussed over more than 60 pages [AR 521-84, 590-93]. Regarding function-by-function determinations, the Progress Report discussed the x-rays, MRIs, and subjective complaints as to the back and each of the feet [AR 472-73]; the Final Report noted individual functions for the back (including separate measurements for the different portions of the spine), lower extremities (including separate measurements for each foot), and upper extremities [AR 434-39]; and the Medical Evaluation noted individual functions for gait, the lumbar spine, hips/thighs (including separate measurements for each side), ankles (including separate measurements for each ankle, and strength of lower extremities (including separate measurements for each side) [AR 590-93].

"Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (citation, alteration, and internal quotation marks omitted). A court must review "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [the ALJ] did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). For the reasons stated above, the ALJ's claims regarding the supportability of these medical opinions lack substantial evidence. Thus, the ALJ erred in conducting the factual analysis of these medical opinions.

### 7.    The Error was Not Harmless

An ALJ decision will not be reversed for errors that are harmless. *Stout v. Comm'r, Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990)). However, a reviewing court cannot consider an error harmless "unless it can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination." *Id.* at 1056. Put differently, legal errors are harmless only if they are inconsequential to the non-disability decision. *Id.* at 1055.

Here, the Court cannot conclude the ALJ's improper analysis as to the supportability and consistency of Drs. Dini's and Bulczynski's medical opinions was harmless. These medical opinions included greater limitations than were assessed by the ALJ in the RFC. [AR 23, 395, 397, 399, 401, 405, 431, 439, 595.] If the ALJ had properly analyzed the medical opinions, it is possible the ALJ either would have found that Plaintiff was disabled or rendered an RFC that accounted for the greater limitations. Based on this record, the Court cannot find the ALJ's legal errors were inconsequential to the non-disability decision. *See Treichler*, 775 F.3d at 1099.

**B.      Remaining Issues and Remedy**

Plaintiff also argues the ALJ did not properly reject Plaintiff's subjective symptom testimony when assessing Plaintiff's RFC.  [Dkt. No. 13 at 22.]  Because the Court concludes this case be remanded on an open record, the Court declines to address Plaintiff's other claims of error.  *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 20 (2021) ("[W]e should not answer more than is necessary to resolve the parties' dispute."); *see also Smith*, 14 F.4th at 1111 ("[T]he court addresses only those [issues on appeal] relevant to its decision to remand the case to the agency[.]"); *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) ("We have no occasion to reach [the claimant's] other assignments of error, as the record may change on remand.").

**IV.   Order**

For all the reasons stated above, the ALJ's decision is reversed, and the case is remanded on an open record.  A separate judgment will issue.

IT IS SO ORDERED.

Dated: March 19, 2025

_____
PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE